AF Approval __JH___                     Chief Approval ___RBH___

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                      CASE NO. 6:23-cr-86-GAP-EJK

NABIL DAJANI

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, NABIL DAJANI, and the attorneys for the defendant, Mark NeJame and Joseph Flynn, mutually agree as follows:

**A.**    **Particularized Terms**

    1.    <u>Counts Pleading To</u>

        The defendant shall enter a plea of guilty to Counts One, Two, and Three of the Information.  Count One charges the defendant with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371.  Count Two charges the defendant with submitting a false claim, in violation of 18 U.S.C. § 287.  Count Three charges the defendant with enticement of another to travel in interstate commerce for the purposes of prostitution, in violation of 18 U.S.C. § 2422(a).

    2.    <u>Maximum Penalties</u>

        Counts One and Two each carry a maximum sentence of 5 years' imprisonment (for a total of up to 10 years' imprisonment), a fine of up to $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the

Defendant's Initials _____

offense, whichever is greater, a term of supervised release of up to 3 years, and a special assessment of $100.

Count Three carries a maximum sentence of 20 years' imprisonment, a fine of up to $250,000, a term of supervised release of up to 3 years, a special assessment of $100, and an additional special assessment of $5,000.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.   Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

| | |
|---|---|
| First: | Two or more persons in some way agreed to try to accomplish a shared and unlawful plan; |
| Second: | The defendant knew the unlawful purpose of the plan and willfully joined in it; |
| Third: | During the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Information; and |
| Fourth: | The overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |



Defendant's Initials _____          2

The elements of Count Two are:

>First:     The defendant knowingly presented a false claim against the United States to an agency of the United States;

>Second:   The claim was based on a false or fraudulent material fact; and

>Third:    The defendant acted intentionally and knew that the claim was false and fraudulent.

The elements of Count Three are:

>First:     The defendant knowingly attempted to persuade or entice the Victim to travel in interstate or foreign commerce; and

>Second:   The purpose of the travel was for the Victim to engage in prostitution, or any sexual activity for which any person can be charged with a criminal offense.

4.   Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement.

Defendant's Initials _____        3

6.      Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663(a) and (b) and 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the Small Business Administration in an amount as determined by the Court and the Probation Office, which is estimated to be at least approximately $732,700.  Of that amount, approximately $432,700 shall be joint and several with any restitution ordered in *United States v. Joel Micah Greenberg*, Case No. 6:20-cr-97-GAP-LRH.  Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

7.      Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.      Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States

Defendant's Initials _____                4

will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this plea agreement, including, but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all

Defendant's Initials _____        5

relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10. Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of

Defendant's Initials _____          6

defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

      11.   Cooperation - Responsibilities of Parties

          a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

          b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

          (1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

          (2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the

Defendant's Initials _____       7

event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

Defendant's Initials _____    8

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 2428, and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, $158,188.58 in proceeds the defendant admits he obtained, as the result of the commission of the offenses to which the defendant is pleading guilty.[1] The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offenses, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21

---

[1] The defendant obtained a total of $315,800 in proceeds as the result of the commission of the offenses to which the defendant is pleading guilty; however, the United States is seeking an order of forfeiture in the amount of unrecovered proceeds: $158,188.58. On July 8, 2022, and July 14, 2022, the Federal Bureau of Investigation administratively forfeited a total of $157,611.42 in proceeds seized from the defendant's various bank accounts.

Defendant's Initials _____        9

U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction.  The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program.  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of  the Fed. R. Crim. P., to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

Defendant's Initials _____                    10

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Fed. R. Crim. P. 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps

Defendant's Initials _____       11

include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the plea agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

13.  Sex Offender Registration and Notification

The defendant has been advised and understands, that the offense in Count Three may be a qualifying offense under the Sex Offender Registration and Notification Act, a federal law, and as such the defendant must register and keep the registration current in each of the following jurisdictions: the location of the

Defendant's Initials _____            12

defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

14.    Notice of Possibility of Remand Upon Entry of Guilty Plea

The defendant is advised that a finding of guilt will subject the defendant to the mandatory detention provision of 18 U.S.C. § 3143(a)(2) and that the defendant will be remanded to the custody of the U.S. Marshals pending sentencing unless 18 U.S.C. § 3143(a)(2)(A) & (B) or 18 U.S.C. § 3145(c) applies.

**B.    Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and

Defendant's Initials _____        13

whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.  <u>Supervised Release</u>

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials _____          14

4.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this plea agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and

Defendant's Initials _____        15

obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether

Defendant's Initials _____                    16

or not such decision is consistent with the government's recommendations contained herein.

7.     Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _____                    17

9.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up

Defendant's Initials _____        18

those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____                    19

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ____1st____ day of _____May_____, 2023.

ROGER B. HANDBERG
United States Attorney

_____
NABIL DAJANI
Defendant

_____
Mark NeJame
Attorney for Defendant

_____ for
Amanda S. Daniels
Assistant United States Attorney

_____ for
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

_____
Joseph Flynn
Attorney for Defendant

Defendant's Initials _____                    20

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:23-cr-

NABIL DAJANI

## PERSONALIZATION OF ELEMENTS

**Count One - Conspiracy**

First:      Did you and at least one other person in some way agree to try to accomplish a shared and unlawful plan?

Second:     Did you know the unlawful purpose of the plan and willfully join in it?

Third:      During the conspiracy, did one of the conspirators knowingly engage in at least one overt act as described in the Information?

Fourth:     Was the overt act committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy?

**Count Two – Submission of a False Claim**

First:      Did you knowingly present a false claim against the United States to an agency of the United States on or about August 5, 2020?

Second:     Was the claim based on a false or fraudulent material fact?

Third:      Did you act intentionally and know that the claim was false and fraudulent?

Defendant's Initials           21

## Count Three – Enticement of Another to Travel for Prostitution

First:      Did you knowingly persuade or entice, or attempt to persuade or entice, or aid and abet another in persuading or enticing, Victim-1 and Victim-2 to travel in interstate or foreign commerce?

Second:   Was the purpose of the travel for Victim-1 and Victim-2 to engage in prostitution?

Defendant's Initials _____        22

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                           CASE NO. 6:23-cr- 85-GAP-EJK

NABIL DAJANI

## FACTUAL BASIS

### Overview of EIDL Loan Process

In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. In conjunction with an officially declared disaster by the United States Government, the CARES Act allowed for the Small Business Administration, an agency of the United States, to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic. To qualify, a business had to be in operation prior to February 1, 2020.

Using the SBA online portal, EIDL applicants submitted personal and business information in support of each EIDL application, and they did not have to submit supporting documentation of any sort. The application included a jurat-like paragraph where the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.

The application process involved filling out assorted data fields relating to the size of the affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in

Defendant's Initials _____          23

the 12 months prior to the date of the disaster (January 31, 2020).  This information furnished by the applicant was then used by SBA application evaluation systems to calculate the principal amount of money the small business was eligible to receive in the form of an EIDL.

In addition to applying for an EIDL, an applicant could request and then receive up to $10,000 in an EIDL Cash Advance Grant based on the number of employees claimed.  The EIDL Cash Advance Grant was disbursed in amounts of $1,000 per claimed employee.  Any EIDL Cash Advance Grant funding that was received by an applicant based on the number of claimed employees did not need to be repaid to the SBA if the loan application was ultimately denied by the SBA, or if the applicant declined the EIDL that was offered by the SBA at a later date.

Pursuant to the provisions governing the EIDL program, loan proceeds had to be used by that business on certain permissible expenses.  The EIDL (working capital) loans had to be used by the afflicted business to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

To evaluate EIDL applications, the SBA computer system used automation and system programming to quickly conduct checks of each application submitted by each applicant.  The SBA computer system performed checks of the applicant's credit worthiness and evaluated other elements of data furnished by the applicant to identify duplicative applications and indicators of fraudulent activity.  The SBA computer system also utilized the information furnished by the applicant to determine the dollar

Defendant's Initials _____          24

amount of the loan offer that the applicant may be extended, which included gross revenues in the 12-month period prior to the disaster, costs of goods sold during that same timespan, and loss of rental income. If any aspect of the application did not pass the automated evaluation within the SBA computer system, the application's progress was stopped, and an electronic notification was sent to the applicant regarding the potential cause for the application to be halted. The applicant was then given the opportunity to engage with the SBA and request reconsideration of the application. The loan application evaluation system also was designed so that SBA employees, to include SBA Loan Specialists, could affect applications and manually change and override the system's actions if appropriate and necessary.

### Overview of the SBA Conspirator

NABIL DAJANI conspired with an SBA employee (referred to herein as the "SBA Conspirator") and Joel Micah Greenberg to submit false applications for EIDL loans and to pay the SBA Conspirator bribes and kickbacks with the intent to influence the SBA Conspirator to allow and make an opportunity for the commission of a fraud on the United States through the preparation and submission of fraudulent EIDL applications to the SBA.

The "SBA Conspirator" was a resident of the Middle District of Florida and a "public official" as defined by 18 U.S.C. § 201(a)(1). In or about May 2020, the SBA Conspirator began working for the U.S. Government as an SBA Loan Specialist. As an SBA Loan Specialist, the SBA Conspirator was responsible for processing home and business loans; making recommendations on collateral needed to secure loans;

Defendant's Initials _____        25

applying accepted financial procedures to analyze financial resources to determine an applicant's ability to repay requested loans; reviewing all pertinent facts needed to make eligibility determinations by analyzing such factors as the nature and cause of damage, intended use of proceeds, legislative and administrative loan limits, and disposition of insurance and other recoveries; ensuring loan files contain all pertinent documentation, to include conversations with applicants and written recommendations or justifications for conclusions; processing loan applications on web-based computer system; and responding orally and in writing to applicants or their representatives.    Because of COVID-19, the SBA authorized the SBA Conspirator to work from her residence located in the Middle District of Florida.

For the EIDLs discussed in this plea agreement, the SBA did not assign the SBA Conspirator to work on any of them, and the SBA Conspirator never notified the SBA that she was involved in any aspect of handling those loans.    The SBA Conspirator was not authorized to use the SBA computer system for any of the loans referenced in this plea agreement.

### DAJANI's Fraudulent EIDL Application for Perfect Golf Grip

According to records maintained by the Florida Department of State, DAJANI is a managing member of the Perfect Golf Grip, LLC.    On or about April 14, 2015, Articles of Organization were filed for the Perfect Golf Grip.    On or about September 27, 2016, DAJANI filed a reinstatement of the company in which he was identified as the registered agent.    On or about June 26, 2017, DAJANI submitted Articles of Amendment to Articles of Organization in which he was identified as an authorized

Defendant's Initials _____            26

member.  In annual reports submitted for 2019 and 2020, DAJANI is identified as an authorized member and Vice President.

In or about June 2020, DAJANI was referred by another individual to the SBA Conspirator for the purpose of applying for an EIDL.  On or about June 19, 2020, DAJANI contacted the SBA Conspirator about submitting an EIDL for the Perfect Golf Grip.  On or about that same day (June 19, 2020), in the Middle District of Florida, the SBA Conspirator submitted an EIDL application for the Perfect Golf Grip on DAJANI's behalf.  In that loan application, it was represented that the Perfect Golf Grip earned $1,728,963 in gross revenue in the 12-month period prior to the COVID-19 Pandemic (from February 2019 to January 2020), that the cost of doing business in the same period was identified as $1,237, that the business's rental property income losses were $23,568, and that it had 12 employees.  DAJANI was identified as the sole owner of the company, and the bank account where funds were to be deposited was one for which DAJANI was the sole signatory.

As DAJANI knew when the application was submitted, those representations were false and fraudulent.  The Perfect Golf Grip did not earn the revenues set out on the application, and it did not have 12 employees.  Bank records for two accounts of the Perfect Golf Grip during the pertinent time period of February 2019 to January 2020 establish that the revenues in DAJANI's application for The Perfect Golf Grip were inflated (cumulative amounts reflected for time period of February 2019 to January 2020):

Defendant's Initials _____          27

| Bank | Deposits | Withdrawals | Ending Balance as of 1/31/2020 |
|---|---|---|---|
| Valley National Bank | $39,167.55 | $33,681.52 | $5,486.03 |
| Iberia | $3,540.42 | $4,393.98 | Account closed |

In fact, the deposits made into those two accounts did not always reflect earnings by the Perfect Golf Grip, but sometimes consisted of transfers of funds from DAJANI's other accounts or amounts earned from his mortgage business.

The SBA did not initially approve DAJANI's application for the Perfect Golf Grip. On or about June 20, 2020, the SBA sent DAJANI a letter advising that his application was denied due to his "unsatisfactory credit history." In a text message on or about June 20, 2020, DAJANI asked the SBA Conspirator to use her access to the SBA system to determine whether DAJANI's credit score was above the minimum requirement; the SBA Employee advised that it was not.

This began a series of regular texts, totaling over 20, between DAJANI and the SBA Conspirator where DAJANI and the SBA Conspirator discussed DAJANI's poor credit and the SBA Conspirator's attempts to use her access to the SBA System to assist DAJANI in his efforts to obtain an EIDL loan for the Perfect Golf Grip. The following are some of those text messages:

| Date | Text |
|---|---|
| 6/21/2020 | SBA Conspirator advises DAJANI that she can use the SBA system to "refresh internally to make sure the score comes up" |
| 6/22/2020 | SBA Conspirator states, "I will refresh [the SBA system] and keep a lookout" |
| 6/25/2020 | SBA Conspirator states, "Your score is up [] today" |

Defendant's Initials _____        28

| | |
|---|---|
| 6/25/2020 | DAJANI states, "Not enough to render approval for this loan," and SBA Conspirator replies, "Working on it" |
| 7/13/2020 | DAJANI states, "Morning [SBA Conspirator], thanks for checking up on my credit report again – if that was u" and SBA Conspirator responding, "Yes, it was me and I am keeping up on it!" |
| 7/17/2020 | SBA Conspirator states, "I'll pull it [DAJANI's credit report] on Monday" |

As he was waiting for his EIDL for the Perfect Golf Grip to process, DAJANI referred other loan applicants to the SBA Conspirator. DAJANI collected "consulting fees" for the SBA Conspirator and referred others to the SBA Conspirator. The text messages establish that one of DAJANI's motives was to encourage the SBA Conspirator to continue to "fix" the problems with DAJANI's loan application for the Perfect Golf Grip, which were caused by DAJANI's poor credit, by offering to assist her in obtaining additional referrals and payments for using her position to submit fraudulent EIDLs. Some of DAJANI's text messages related to his role as a facilitator of fraudulent loans include:

| Date | DAJANI Text |
|---|---|
| 6/22/2020 | Both Greenberg and [another individual referred by DAJANI] have been advised that u also have business is assisting them. They understand |
| 6/25/2020 | For ur consulting business suppose some work is done and suppose a client applies for a loan and is successful, what would you say is a good consulting fee? I'm collecting now make sure it's paid lol |
| 6/25/2020 | I said $1000. Good? Need address and to who made |
| 6/25/2020 | I have my [relative of DAJANI] wants it now. Piece of cake deal. Good scores has car dealership |

Defendant's Initials _____          29

| | |
|---|---|
| 6/25/2020 | Make it [DAJANI's loan for the Perfect Golf Grip] happen and you get 1k [another individual referred by DAJANI] 1k Greenberg 1k [another individual referred by DAJANI] (new one and easy) and 3K me |
| 6/26/2020 | I gave ur email address to a friend [another individual referred by DAJANI] who'll be emailing u. |
| 6/27/2020 | Good morning [another individual referred by DAJANI] and another close friend will loan me @12K to payoff 2 cards maxed out that'll boost my score if paid off. If ur able to get it done for [another individual referred by DAJANI] or if you tell him he's good after ur 10am call then they're loaning me the $ |
| 6/29/2020 | Oh and PLEASE LET ME KNOW when [another individual referred by DAJANI] gets funded bc he's helping me payoff 2 other cards. |
| 7/1/2020 | Remember I told you I look out for you make sure ur work doesn't go unrewarded. Anyone who doesn't see the privilege shouldn't receive the same attention back so any referrals from [another individual who referred people for loans to the SBA Conspirator] I'd leave on the back burner for now. Just sayin |
| 7/1/2020 | Just spoke to my [relative of DAJANI] he's sending you 2k I'll give him your address |
| 7/2/2020 | Morning. Going to see [another individual referred by DAJANI] make sure he mails you. He assured me and I trust him that he and whoever else he referred mail u as well. Checking with [another individual referred by DAJANI] now she's sending 1000 |
| 7/2/2020 | Expect [another individual referred by DAJANI] any day then if not today. Notice how I negotiated double ur expectation for u. Told everyone if you want favor pulled don't even consider being cheap |
| 7/2/202 | My [relative of DAJANI] is clear and very happy to pay invoice and also instructed Amounts |
| 7/4/2020 | Hey for [another individual referred by DAJANI] do you want her to pay by card now? |

Defendant's Initials _____        30

| 7/16/2020 | In response to a text from the SBA Conspirator complaining that [another individual referred by DAJANI] was a "deadbeat," DAJANI volunteered to help her with collections: "Gimme the names." |
|---|---|

DAJANI's efforts eventually paid off. On or about July 19, 2020, at 8:04 p.m., the SBA Conspirator, who was not assigned to this loan application in any official capacity, accessed the Perfect Golf Grip's EIDL application and changed its status to "Credit Pulled." As a result, the SBA system approved the EIDL loan for the Perfect Golf Grip.

On or about July 19, 2020, DAJANI accepted the terms of the EIDL loan by executing a Loan Authorization and Agreement, which set out several requirements. It provided that "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter" and that "[t]here has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)." By his signature, DAJANI represented that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan" and that "Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this

Defendant's Initials _____        31

Loan, other than those reported on the Loan Application." The Loan Authorization and Agreement specifically advised DAJANI of the penalties associated with making false statements, including fines and imprisonment pursuant to "15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws."

As DAJANI knew when he executed the Agreement, he was engaged in fraud and was not going to use the funds "as working capital to alleviate economic injury" caused by COVID-19. Before receiving the EIDL funds, the Perfect Golf Grip's bank account had a balance of only $146.25. After receiving the credit from the SBA in the amount of $149,900 for the fraudulent EIDL for the Perfect Golf Grip, DAJANI transferred $23,000 of those funds to his personal checking account at Valley Bank, account number ****7030. There were no other credits to the Perfect Golf Grip bank account following the credit from the SBA loan (except for one credit of $1.57), which is consistent with a non-operational business. Further disbursements from the account consisted primarily of personal expenses for DAJANI, including payments to American Express, debit card purchases, ATM withdrawals, and miscellaneous checks cashed. The balance in the account as of September 30, 2020, was $71,503.78. On or about November 6, 2020, the United States seized $69,239.62 pursuant to a federal seizure warrant. DAJANI agrees and acknowledges that those funds were the proceeds of the conspiracy.

DAJANI also committed fraud by failing to identify his payment to the SBA Conspirator. As noted above, DAJANI falsely certified that "Borrower certifies that

Defendant's Initials _____      32

no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application." In fact, DAJANI paid the SBA Conspirator $1,000 to a Cash App account controlled by the SBA Conspirator on or about July 22, 2020, which funds were those that DAJANI had promised repeatedly to pay the SBA Conspirator with the intent to influence the SBA Conspirator to allow and make an opportunity for the commission of a fraud on the United States through the preparation and submission of a fraudulent EIDL application to the SBA for the Perfect Golf Grip.

### DAJANI's Assistance for Greenberg

DAJANI is a friend of Greenberg. On the same day that the SBA Conspirator submitted a false loan for the Perfect Golf Grip, DAJANI told Greenberg about the SBA Conspirator and the scheme to submit false EIDL applications.

On or about June 19, 2020, DAJANI texted Greenberg that he had an "easy" and "quick" way for Greenberg to get a loan for "up to $160K." DAJANI advised Greenberg to contact the SBA Conspirator.

On or about June 19, 2020, Greenberg texted the SBA Conspirator that he was referred by DAJANI "for assistance with a loan application." Greenberg and the SBA Conspirator talked that day. In connection with that conversation, Greenberg sent the SBA Conspirator a portion of his 2018 personal tax return. The SBA Conspirator advised, "We can use this to file . . . you should be able to apply for 150k." The SBA Conspirator requested that Greenberg send information for the loan, including his date

Defendant's Initials _____  33

of birth, place of birth, and bank account information.  The SBA Conspirator prepared the loan application and advised Greenberg to forward her the email that he would receive.  The SBA Conspirator advised that she would be able to "look into the [SBA] system and upload[] your document from there" and advise him about the "timeframe on it's competition."  Six hours later, the SBA Conspirator told Greenberg that the application was "accepted" and that she would advise him about the "underwriting timeframe [o]ver the next week."  The SBA Conspirator texted Greenberg a photograph of her SBA computer that displayed the approved application as shown on the SBA system.

The application prepared and submitted by the SBA Conspirator was fraudulent.  As had been done with DAJANI's fraudulent application for the Perfect Golf Grip, the revenues of the business, the cost of goods sold, and lost rental incomes were fabricated and inflated to induce the SBA into providing a large loan (of $133,000) to Greenberg.

As Greenberg knew at the time, the SBA Conspirator was using her access to the SBA system to ensure that he got a loan that was based on false representations. The SBA Conspirator texted Greenberg a screen shot from the SBA system of some of the information for his loan application, which included a claim that Greenberg earned $13,461 in monthly sales, which Greenberg knew was not true.

On or about June 21, 2020, Greenberg texted DAJANI the screen shot that the SBA Conspirator had texted about Greenberg's EIDL application.  The screen shot was of a computer screen from the SBA computer system that included the SBA

Defendant's Initials _____        34

Conspirator's name and title ("SBA Loan Officer").  Greenberg asked DAJANI: "What does this mean?" and "So what does she [the SBA Conspirator] make out of this?  What's her compensation, I'm confused."

DAJANI texted Greenberg that the SBA Conspirator worked for the SBA and that she processes loans for him "privately" if he asked "her to as a favor" and that "it's an SBA loan no one knows about."  DAJANI explained that Greenberg needed to pay the SBA Conspirator for her assistance ("so just cut her a check for whatever you get funded"),  Greenberg acknowledged this. DAJANI knew that Greenberg had no intention of using the funds for any type of legitimate business.

DAJANI texted the SBA Conspirator to continue to facilitate the fraudulent EIDL to Greenberg and to obtain additional loans for Greenberg.  DAJANI also served as the conduit for the payments that were to be made by Greenberg to the SBA Conspirator for assisting with the fraudulent EIDL application.  The following are some of the over 20 texts that DAJANI sent to the SBA Conspirator to facilitate the submission of false applications for Greenberg and to arrange for payments by Greenberg to the SBA Conspirator:

| Date | DAJANI Text |
| --- | --- |
| 6/19/2020 | My good friend Greenberg is texting u shortly for an application.  He's a perfect applicant for this |
| 6/21/2020 | I'm so envious of Greenberg lol [after learning that Other Conspirator's application was approved] |
| 6/22/2020 | Both Greenberg and [another individual referred by DAJANI] have been advised that u also have a consulting business and that that business is assisting them.  They understand |



Defendant's Initials _____    35

| | |
|---|---|
| 6/25/2020 | Make it [approval of the Perfect Golf Grip's EIDL loan] happen and you get 1k [another individual referred by DAJANI] 1k Greenberg 1k [another individual referred by DAJANI] (new one and easy and 3k me |
| 6/27/2020 | Anyway can you set up another call with Greenberg for another round off his other entities? He's going to owe you 2k |
| 6/28/2020 | DAJANI identifies referrals to date as including Greenberg and another individual, and that Greenberg was "looking for another one. He has several entities" |
| 6/29/2020 | Please let me know if you spoke to Greenberg about more and how much you think is possible. |
| 7/1/2020 | Following up to our discussion yesterday. Greenberg: the 2 additional loans how much is each for? AND: I talked to him yesterday, besides his wife does he qualify for 1 or 2 more? Those are good too if available. [another individual referred by DAJANI]: status if you have one. I'm making sure us totally good on every deal in every way |
| 7/1/2020 | In response to a text from the SBA Conspirator complaining that "we have not received any of the checks as of today," DAJANI texted the SBA Conspirator: "[another individual referred by DAJANI too? I know [another individual referred by DAJANI] and Greenberg [another individual referred by DAJANI] are for sure. Those are the ones funded I send thus far."<br><br>If Greenberg is a certainty for the other 2 I'll have him mail 3k now. 1k per |
| 7/1/2020 | For sure. Don't worry all are good. If Greenberg is good on the other 2 I'll have him send you 3k immediately. If you have an idea when he's getting funded please let me know |
| 7/2/2020 | If you happen to know a status on Greenberg 2 new ones please let me know |
| 7/2/2020 | Greenberg 1k for first 2k for other 2 for 3k total comm |



| 7/2/2020 | If you have any status on Greenberg please advise |
| 7/2/2020 | Apologies for late text just wondering if Greenberg situation is easy fix or not. |
| 7/2/202 | I have my bro in law getting you voided check first thing to small u.  Lmk if you need anything like that on Greenberg and I'll get it. |
| 7/13/2020 | And you know when Greenberg might be funded? |
| 7/22/2020 | Good morning superstar.  Greenberg (2( and I all funded |

Working with the SBA Conspirator and DAJANI, Greenberg successfully obtained three fraudulent EIDLs, totaling approximately $433,000 in principal plus an additional $2,000 in advances for non-existent employees.  As noted above, the first EIDL application for Greenberg was in his name for a business that did not exist.  The other two EIDL applications were made using the names of companies that used to belong to Greenberg, but that were inactive, had no revenues, and had been administratively dissolved.

The SBA deposited the funds for the three loans for Greenberg into bank accounts controlled by him.  As was the plan from the inception of the conspiracy, Greenberg shared some of the proceeds that he obtained from the fraud scheme with his conspirators.  Greenberg gave DAJANI $16,000, consisting of a $6,000 check dated June 27, 2020, with a memo line for "loan," a $5,000 check dated July 26, 2020, with a memo line of "Fee July," and a $5,000 check dated July 26, 2020, with a memo line of "Fee August."  These checks represent Greenberg sharing some of the proceeds with the person who brought him into the conspiracy (DAJANI), with the three checks corresponding with when Greenberg obtained funds from his fraudulent SBA EIDLs. The notations on the checks were efforts to conceal the true purpose of the payments.

Defendant's Initials _____          37

Greenberg did the same with the SBA Conspirator, by sending her $3,000 on or about July 16, 2020, using Cash App.   Greenberg sent these funds as part of his agreement with DAJANI and the SBA Conspirator to influence an official act of the SBA Conspirator related to the submission and approval of Greenberg's three loans and to influence the SBA Conspirator to allow or make an opportunity for the commission of a fraud on the United States.

### DAJANI's Fraudulent EIDL Application for Community Cultural

DAJANI filed another fraudulent EIDL application for Community Cultural Consulting LLC, which he created in December 2018.   His only client was the Seminole County Tax Collector's Office.   Greenberg, using funds from the Seminole County Tax Collector's Office, paid Community Cultural Consulting approximately $16,000 by credit card in 2019.   The bank records do not reflect any deposits from any other entities related to consulting work.   DAJANI never filed an annual report, and Community Cultural Consulting was administratively dissolved on September 25, 2020.

Prior to that, DAJANI used his dormant company to obtain another EIDL.   On or about August 1, 2020, DAJANI texted the SBA Conspirator: "Hi!   Open for business?  I can't believe I forgot about my other business – ACTIVE!  Are you free to try to get me qualified."

The SBA Conspirator agreed to assist DAJANI on another fraudulent EIDL. The text messages reflect multiple indicators of fraud.   DAJANI advised that he did not have an Employer Identification Number for the business and that he did not have

Defendant's Initials _____        38

information for his bank account. In fact, DAJANI did not open the bank account for Community Cultural Consulting for another two days.

The application for Community Cultural Consulting was false and fraudulent. It was submitted by another individual acting at the SBA Conspirator's direction and on behalf of DAJANI on or about August 4, 2020, at 9:40 p.m. in the Middle District of Florida. The application represented that the business realized gross revenue of $305,667 in the 12-month period prior to COVID-19 and that the business had no costs of doing business and no rental properties income losses (yielding a 100% profit margin). The contact email submitted for DAJANI within the application was identified as a Gmail account that belonged to DAJANI. The destination financial account for any SBA funds was listed as Valley National Bank account #****3603, which was the account that DAJANI controlled and set up on or about August 3, 2020.

As DAJANI knew when those representations were made, they were false and fraudulent. Community Cultural Consulting had done no work for most of 2019 or at any point in 2020, and it was not an active business. It had no operations, revenues, or employees. The only consulting fees received by the business were the approximately $16,000 that was received in 2019 from the entity where Greenberg worked.

In reliance upon the false representations made in the EIDL application of Community Cultural Consulting, the SBA approved the fraudulent application. On or about August 5, 2020, DAJANI executed a Loan Authorization and Agreement

Defendant's Initials _____ 39

that contained the same terms as the Agreement that he executed for the Perfect Golf Grip. In that Agreement, DAJANI falsely certified that Community Cultural Consulting had suffered economic injury in the month of January 2020 and continuing thereafter, that the revenue amounts set out in the EIDL application were true and correct, that the information in the EIDL application was true, correct, and complete, and that no fees were to be provided in connection with the EIDL. As DAJANI knew, Community Cultural Consulting was a defunct business that had not suffered any economic injury, and he had no intention of using any EIDL funds as "working capital to alleviate economic injury caused by" COVID-19.

On or about August 7, 2020, the SBA credited Community Cultural Consulting's account at Valley National in the amount of $149,900. Prior to that, the balance in the account was only $250. Following the credit from the SBA loan, DAJANI transferred $41,000 to his personal checking account at Valley Bank, account number ****7030. Except for the initial $250 deposit that was made to open the account, there were no other deposits or withdrawals from the account. On or about November 6, 2020, the United States seized $88,371.80 ($85,150.00 from Valley National Bank account number ****3603 held in the name of Community Cultural Consulting, LLC, and $3,221.80 from Valley National Bank account number ****7030 held in the name of Nabil Dajani) pursuant to a federal seizure warrant. DAJANI agrees and acknowledges that those funds were the proceeds of the conspiracy.

Defendant's Initials  40

DAJANI did not use any of the funds in his personal account at Valley National, account number ****7030, for any business expenses of Community Cultural Consulting. Between July 22, 2020, and September 24, 2020, there were nine transfers of funds from the Perfect Golf Grip LLC and Community Cultural Consulting LLC to DAJANI's personal bank account ****7030, totaling $64,000. The only other earnings reflected in DAJANI's personal account between July 22, 2020, and September 24, 2020 was for his payroll from the mortgage company where he works. In other words, the proceeds from the two SBA loans to the Perfect Golf Grip and Community Cultural Consulting were commingled in this account with DAJANI's payroll and other funds. The proceeds were used to pay DAJANI's personal expenses, including payments to American Express, Capital One, debit card purchases, PayPal Instant Transfers, loan payments and ATM withdrawals. None of the funds from the two EIDLs were used in accordance with the intended purpose of the loans.

As he had done after receiving the EIDL for the Perfect Golf Grip, DAJANI paid the SBA Conspirator upon successful receipt of the loan proceeds for Community Cultural Consulting. On or about September 21, 2020, DAJANI paid the SBA Conspirator $1,300 to a Cash App account controlled by the SBA Conspirator, which funds were those that DAJANI had promised to pay the SBA Conspirator with the intent to influence the SBA Conspirator to allow and make an opportunity for the commission of a fraud on the United States through the preparation and submission of a fraudulent EIDL application to the SBA for Community Cultural Consulting.

Defendant's Initials _____                41

The parties agree and acknowledge that the amount of loss in this case for purpose of the federal sentencing guidelines is more than $550,000 and less than $1.5 million, including the loss of approximately $435,000 associated with the loans and advances for Greenberg and the loss of approximately $300,000 for DAJANI's loans. The parties further agree that DAJANI personally received a total of $315,800 in proceeds obtained as a result of the conspiracy. Of that $315,800, the United States has recovered and administratively forfeited $157,611.42.

### Enticement of Victim-1 and Victim-2 to Engage in Prostitution

Between September 2016 and October 2016, while in the Middle District of Florida, DAJANI aided and abetted another individual ("Co-conspirator 1") in persuading, inducing, and enticing Victim-1 and Victim-2 ∧both of whom were consenting adults to travel in interstate commerce, specifically between North Carolina and the Middle District of Florida, to engage in prostitution.

Prior to their travel to the Middle District of Florida, Victim-1 and Victim-2 were known to DAJANI and Co-conspirator 1 as persons who lived in North Carolina and who engaged in prostitution. In September 2016, Co-conspirator 1 contacted Victim-1 using the internet and offered to pay Victim-1 to travel to Florida to "party," which Victim-1 and Co-conspirator 1 understood to mean to engage in sexual activities. Co-conspirator 1 further communicated on behalf of his friend, DAJANI, that DAJANI wished to pay someone to "party," *i.e.* engage in sexual activities, as well. Victim-1 thus recruited a friend, Victim-2, to travel to the Middle District of Florida for this purpose.

Defendant's Initials _____                42

In early October 2016, Victim-1 and Victim-2 traveled from North Carolina to the Middle District of Florida and were paid by Co-conspirator 1 and DAJANI to do so.   After Victim-1 and Victim-2 arrived in the Middle District of Florida, Co-conspirator 1 and DAJANI arranged for Victim-1 and Victim-2 to stay at a hotel in the Middle District of Florida. After Victim-1 and Victim-2 arrived at the hotel, Co-conspirator 1 and DAJANI engaged in sexual activities with Victim-1 and Victim-2.

Defendant's Initials ______          43